# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, AFL-CIO, </br></br>　　Plaintiff, </br></br>v. </br></br>KANSAS CITY SOUTHERN RAILWAY COMPANY, </br></br>　　Defendant. | Case No. 4:10-CV-00751-DGK |

## ORDER GRANTING MOTION TO DISMISS

This case arises out of Plaintiff Sheet Metal Workers International Association, AFL-CIO, concerns that Defendant Kansas City Southern Railway Company is violating the terms of a collective bargaining agreement, and Plaintiff's subsequent attempt to monitor compliance with the agreement. Now before the Court is Defendant's Motion to Dismiss (doc. 13). Finding that the Complaint concerns the same wrong and arises out of the same nucleus of operative facts as a prior lawsuit between the parties, the Court holds the present complaint is barred by res judicata.

The Motion is GRANTED. Plaintiff's Motion for a Preliminary Injunction (doc. 15) is DENIED AS MOOT.

**Background**

The collective bargaining agreement ("CBA") between the parties provides that non-SMWIA represented employees may only perform sheet metal work that is "incidental" to the main task they are performing. If there is a dispute over whether the work is incidental, the Union may request that the work be timed to determine whether the allegedly incidental work exceeds the time for the main task. If so, it is not incidental. Congress has also created an

1

exception to the rule restricting the amount of sheet metal work performed by non-sheet metal workers in the railroad industry, holding that an employee in any craft may perform tasks normally performed by another craft for up to two hours a day.

For several years, Defendant Kansas City Southern Railway Company ("KCSR" or "the Railroad") and Plaintiff Sheet Metal Workers International Association, AFL-CIO ("SMWIA" or "the Union") have been embroiled in an on-going dispute over the Railroad's virtual elimination of sheet metal workers from its shops and the amount of sheet metal work the railroad has assigned to non-SMWIA represented employees. The Union claims that in 1999 there were at least twelve sheet metal workers actively working full schedules, but by the end of 2008 the Railroad had reduced the number to one at its Kansas City shop, and completely eliminated the position in its Shreveport shop.

In April of 2009 the Union sued the Railroad in this Court, case no. 09-CV-00091, alleging violations of the Railway Labor Act ("RLA"), 45 U.S.C. § 152. The Union claimed the Railroad abrogated the CBA by assigning sheet metal work to employees who were not sheet metal workers and by refusing to participate in a "time check"—a union audit designed to determine if work is being assigned and performed in compliance with the CBA. Among other things the Union asserted that "[b]y refusing to allow and participate in a time check of the Sheet Metal work performed for KCS, the Carrier has not dealt with SMWIA in good faith, and has not complied with its Section 2 First duty to exert every reasonable effort to make and maintain agreements." Compl. at ¶ 31. The Court granted the Railroad's motion to dismiss, holding that the dispute between the parties was a minor dispute[1] under the RLA and subject to mandatory

---

[1] A minor dispute under the RLA is one growing "out of grievances or out of the interpretation of application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C. § 153 First (i).

arbitration by the National Railroad Adjustment Board. *See* Order dated Nov. 9, 2009 (doc. 21) at 8.

In the wake of the dismissal the Union notified the Railroad that it would like to begin the process of moving claims to arbitration "by sending several Union officers to observe work at the shop for a one week period . . . in order to file any claims or grievances they deem appropriate." The Railroad did not agree to this approach and, six months later, informed the union that it would not permit non-employee union officers to inspect the KCSR shop. The Union argued its demand was justified by the CBA and the RLA, and the Railroad replied that it viewed the Union's request as simply a revised demand for a time check.

The Union has not yet utilized any claim procedures in the CBA on behalf of an individual employee, or brought a grievance to resolve the threshold issue of its alleged entitlement to inspect the shops.

On July 10, 2010, the Union filed the present lawsuit. Among other things, the present Complaint alleges that "[b]y refusing to all SMWIA's officers access to the Shreveport Shop for the purposes of observing work and work assignments . . . KCS has violated its duty to make every reasonable effort to maintain agreements . . ." Compl. at ¶ 42.

## Discussion

The Railroad moves to dismiss, arguing (1) that the doctrine of res judicata prohibits the Union from re-litigating the issue of the observation of carrier operations; (2) that the Union has no viable cause of action under Section 2 of the RLA; and (3) that the dispute over the Union's claimed right of access is subject to mandatory arbitration. Holding that the doctrine of res judicata bars the Union's complaint, the Court grants the Railroad's motion and does not address the remaining arguments.

Res judicata, or claim preclusion, prohibits a party from re-litigating a cause of action on grounds that were raised, or could have been raised, in a prior lawsuit. *Lane v. Peterson*, 899 F.2d 737, 741 (8th Cir. 1990). The doctrine serves the important interest of finality by preventing endless litigation of the same claim. *See Federated Dep't Stores v. Moitie*, 452 U.S. 394, 401-02 (1981). Res judicata is a bar to a subsequent action if the prior judgment was rendered by a court of competent jurisdiction, the prior judgment was a final judgment on the merits, and the same cause of action and the same parties were involved in both cases. *Banks v. Int'l Union Electronic, Elec., Tech., Salaried & Machine Workers*, 390 F.3d 1049, 1052 (8th Cir. 2004). The same cause of action is implicated by a new complaint if "it arises out of the same nucleus of operative facts as the prior claim." *Banks*, 390 F.3d at 1052; *Murphy v. Jones*, 877 F.2d 682, 684-85 (8th Cir. 1989) ("[T]he claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose"). "What constitutes a 'transaction' or 'series of connected transactions' is 'to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage'." *Poe v. John Deere Co.*, 695 F.2d 1103, 1106 (8th Cir. 1982) (quoting Restatement (Second) of Judgments § 24(2)).

The Union argues first that the present action is not seeking redress for the same wrong alleged in the 2009 case. It contends that the allegations in the 2009 case were that the Railroad violated the terms of the CBA that reserved sheet metal work for sheet metal workers and provided for time checks to police the CBA. The Union contends it sought to have its officers observe the assignment of work at the shop only after the Court ruled that this dispute had to be

handled through the grievance/arbitration process, and the second lawsuit arose because the Railroad prevented it from making these observations.

The Court finds that present case is only a slightly different formulation of the wrong alleged in the 2009 case. The 2009 Complaint asserts that "[b]y refusing to allow and participate in a time check of the Sheet Metal work performed for KCS, the Carrier has not dealt with SMWIA in good faith, and has not complied with its Section 2 First duty to exert every reasonable effort to make and maintain agreements." Compl. at ¶ 31. The present Complaint alleges that "[b]y refusing to all SMWIA's officers access to the Shreveport Shop for the purposes of observing work and work assignments . . . KCS has violated its duty to make every reasonable effort to maintain agreements . . ." Compl. at ¶ 42. Both complaints allege that the Railroad is violating its duty to make every reasonable effort to maintain agreements, that is, comply with the CBA, by refusing to allow the Union to monitor the agreement on site, the difference being in the former case the monitoring is called a "time check" and in the later case an "observation."

The Union's second argument, that the conduct complained of in the present case does not grow out of the same nucleus of operative facts, is also not persuasive. The Union contends there are three factual distinctions here: (1) time checks are a "creature of contract," while observations spring forth from the Union's function as a representative; (2) time checks are conducted jointly with the Railroad, while observations involve only Union officers; and (3) the Union's plan to conduct observations was developed after the Court dismissed the 2009 case.

These are not meaningful distinctions. Assuming for the sake of argument that time checks and observations are different and that an "observation" is not simply a "time check" unilaterally foisted on the Railroad by the Union, they both serve the same function: To monitor

compliance with the CBA's provisions reserving sheet metal work for union sheet metal workers. The Union's underlying grievance here is the same, that the Railroad is violating these provisions of the CBA. The second alleged distinction is also meritless because there is virtually no difference between a time check and an observation. As a practical matter, both time checks and observations would involve Railroad officials accompanying the Union officers performing the time check/observations, and the process would be indistinguishable from the shop-wide time check the Union sought previously. The Union's suggestion that the Railroad would permit Union officials to engage in the proposed observations, which are arguably more elaborate and intrusive than a joint time check, without being accompanied by Railroad representatives, is unrealistic. With respect to the third distinction, the fact that the Union devised its observation plan after the Court dismissed the previous case confirms that the Union's motivation here remains the same as in the previous case: To gather information about suspected violations of the CBA without going through the mandated grievance/arbitration procedure.

Finally, the Court finds no merit to the Union's suggestion that res judicata does not apply because given the nature of the planned observation and its origination after dismissal of the earlier case, this issue could not have been fully and fairly litigated in the earlier action. The Court's previous ruling was that the time check dispute was subject to mandatory arbitration, thus the Court lacked subject matter jurisdiction to hear it. The Union cannot evade this holding by re-labeling the proposed procedure an "observation" and insisting it was not addressed in the prior order. Consequently, the Court holds this issue was fully and fairly adjudicated in the previous case.

## Conclusion

For the reasons discussed above, the Court holds the present complaint is barred by the doctrine of res judicata. Defendant's Motion to Dismiss (doc. 13) is GRANTED. Plaintiff's Motion for a Preliminary Injunction (doc. 15) is DENIED AS MOOT.

**IT IS SO ORDERED.**

Date:  April 15, 2011  /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT